UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| J'MIN VIAMILL,<br><br>                    Plaintiff,<br><br>        v.<br><br>TFP1 INC. D/B/A TOTAL FIRE PROTECTION,<br><br>                    Defendant. | ECF CASE<br><br>No.: _____<br><br><u>COMPLAINT</u><br><br>JURY TRIAL DEMANDED |

Plaintiff J'Min Viamill ("Plaintiff"), by his attorneys, Lipsky Lowe LLP, brings this action against Defendant TFP1 Inc. d/b/a Total Fire Protection ("Total Fire Protection" or "Defendant") and, on information and belief, alleges as follows:

<u>NATURE OF THE ACTION</u>

1.      Within weeks of beginning his employment, Plaintiff was subjected to offensive and targeted religious remarks by his direct supervisor, despite repeatedly objecting to the conduct. When the behavior continued, Plaintiff formally complained to Defendant's Human Resources department. Days later, his supervisor presented him with an inaccurate and retaliatory written performance critique. Plaintiff immediately reported this retaliation, but Defendant failed to respond to either his underlying discrimination complaint or his retaliation complaint.

2.      Separately, Plaintiff suffered a work-related injury that impacted his ability to perform his job duties. Defendant informed him that he could not return to work without medical clearance. In response, Plaintiff sought treatment and requested a short-term medical leave pursuant to his physician's advice, submitting written medical documentation reflecting his work restrictions and later providing updated documentation

extending those restrictions. Defendant instead terminated Plaintiff's employment while he remained under active medical care.

3. Defendant never provided Plaintiff with a basis for the termination, which occurred approximately two weeks after Plaintiff formally complained of religious discrimination and one day after submitting medical documentation supporting his need for medical leave.

4. Accordingly, Plaintiff brings claims for religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"); and parallel claims under the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").

<u>JURISDICTION, VENUE & ADMINISTRATIVE PROCEDURES</u>

5. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as those claims are so related to the federal claims in this action such that they form part of the same case or controversy.

6. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2).

7. On March 14, 2025, Plaintiff filed a timely Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA").

8.      More than 180 days have elapsed since the filing of Plaintiff's Charge of Discrimination. The EEOC has issued Plaintiff a Notice of Right to Sue, and Plaintiff has commenced this action within 90 days of receipt of that Notice.

## THE PARTIES

9.      Plaintiff Viamill is an adult individual, residing in Jamaica, New York.

10.     Defendant TFP1 Inc. d/b/a Total Fire Protection is a private commercial fire protection and life safety services company, with its corporate headquarters located at 111 Crossways Park Drive West, Woodbury, New York 11797 and a principal place of business at 35-03 Bradley Avenue, Long Island City, New York 11101. Total Fire Protection provides fire protection inspection, installation, maintenance, and related services throughout New York City, Long Island, and the Tri-State area.

## STATEMENT OF FACTS

11.     In or about July 2024, Defendant hired Plaintiff as a Truck Driver/Warehouse Associate at the company's Long Island City location. In this role, Plaintiff was responsible for transporting goods and materials between the warehouse and job sites, including loading and unloading products onto company trucks and ensuring deliveries are completed in a timely manner.

12.     At all relevant times, Plaintiff reported to Service Manager Ronen Gershman.

13.     From the outset, Plaintiff observed that the Long Island City workplace was permeated with employees openly cursing and speaking in obscene and profane language. While he attempted to overlook much of it, the constant use of profanity in the workplace made him uncomfortable and conflicted with his sincerely held Christian beliefs.

14.    On September 6, 2024, Gershman exclaimed "God Damn, Jesus Christ" in frustration in the office. Plaintiff thereafter approached Gershman and informed him that, as a Christian, using the Lord's name in vain was offensive to him, and respectfully asked that he refrain from doing so in the future.

15.    Another manager, Production and Quality Control Supervisor Krisendat Toolsie, was also present during this exchange and stood idly by.

16.    Gershman responded with a chuckle, stating in a mocking and dismissive tone, "Do you go to church all day?" Plaintiff was taken aback by the snide remark but calmly responded that he did not, though he was nevertheless devout and hoped that Gershman would respect that at work.

17.    That same day, Plaintiff overheard Gershman during a phone call with a recruiter, during which he lewdly discussed the body of a female tech employee.

18.    After the call ended, Plaintiff again approached Gershman and stated that such comments were sexually harassing and that he was not comfortable hearing them in the workplace. Gershman dismissed Plaintiff's concern, stating that this was "how I get through the day," and moved on.

19.    In the days that followed, Plaintiff observed a marked difference in the way Gershman treated him. Indeed, Gershman became noticeably ruder in his interactions and increasingly isolated Plaintiff from workplace communications and engagement.

20.    Notably, over the following three days, Gershman used the phrase "God damn, Jesus Christ" in Plaintiff's presence approximately five times. Prior to September 6, he had not used the phrase in Plaintiff's presence; however, after Plaintiff's informal

complaint about it, Gershman began using it repeatedly, in what appeared to be an effort to antagonize Plaintiff.

21.    Plaintiff approached Gershman on multiple occasions to reiterate his concern and request that he be more respectful of Plaintiff's sincerely held religious beliefs. In response, Gershman either ignored him or laughingly stated words to the effect of, "I can't help myself."

22.    On September 10, 2024, Plaintiff emailed Human Resources with the subject line "Urgent," reporting the repeated use of profane language in the workplace, including the use of "Jesus Christ" despite his objections.

23.    On September 13, 2024, Plaintiff suffered a work-related injury while lifting on the job. He was treated in the emergency room, informed that he may have sustained muscle or nerve injury from lifting, prescribed medication for chest inflammation, and instructed to take time off from work to rest.

24.    Later that day, on September 13, 2024, Talent Acquisition Specialist Joseph McConnell contacted Plaintiff regarding his HR complaint. Plaintiff was surprised to receive the call, as McConnell was not a member of Human Resources and his job responsibilities did not include investigating or responding to internal complaints.

25.    During the call, McConnell stated that he had been made aware of Plaintiff's complaint and told Plaintiff that, in the future, "you don't need to ever go to HR — if there is ever an issue, you can come to me."

26.    McConnell further acknowledged that he was aware of the "culture" at the Long Island City location, referring to employees' open use of profanity. He vaguely

suggested that he could address the issue, though it was unclear what authority he had to do so in his role, and then ended the call.

27.    Defendant's Human Resources department never contacted Plaintiff and never otherwise responded to his discrimination complaint.

28.    On September 15, 2024, Plaintiff informed Gershman that the ER indicated he may have injured something muscular or nerve-related from lifting and that he had been resting and taking prescribed medication.

29.    On September 16, 2024, Plaintiff returned to work. That same morning, Gershman called him into a conference room and, for the first time during his employment, criticized his performance.

30.    Immediately after that meeting, Plaintiff texted McConnell stating that Gershman had presented him with a list of alleged issues and that he felt he was now "under a microscope" because of his complaint to HR. McConnell did not respond to this complaint of retaliation.

31.    On September 17, Gershman informed Plaintiff that, according to Defendant's Human Resource professional Gina Magrino, Plaintiff could not return to work until he received medical clearance from his medical provider.

32.    On September 19, 2024, Plaintiff was examined by his primary physician, Dr. Lisa Primiani of Mount Sinai. Although the full extent of Plaintiff's injuries was not yet known at that time, the medical assessment made clear that he required further diagnostic evaluation and a period of medical leave from work.

33.    Dr. Primiani issued a written note medically restricting Plaintiff from work through September 26, 2024 and referred him to an orthopedic specialist for further

evaluation. Plaintiff promptly forwarded the doctor's note to Gershman and informed him of the referral and his medical restrictions.

34.    On September 24, 2024, Plaintiff was evaluated by orthopedic specialist Dr. Stephen Johnstone at Mount Sinai Queens.

35.    Upon examination, Dr. Johnstone determined that Plaintiff had sustained significant physical injuries requiring continued medical treatment and further diagnostic evaluation. The findings confirmed that Plaintiff was not medically cleared to return to work and required ongoing restrictions and follow-up care.[1]

36.    Dr. Johnstone issued an additional written note continuing Plaintiff's medical restriction from work for another week due to his condition.

37.    That day, Plaintiff informed Gershman that he remained injured, had received further medical documentation extending his work restriction, and required additional specialist evaluation. He provided Gershman with Dr. Johnstone's note advising same.

38.    On or about September 25, 2024, Plaintiff was issued a termination letter, effective immediately. The letter did not state any reason for the termination, and no representative of Defendant ever provided Plaintiff with an explanation for the decision.

---

[1] Plaintiff was later diagnosed with bilateral rotator cuff tears; cervical spine disc herniations; a lumbar spine injury; and bilateral injuries to the wrists and elbows.

## FIRST CAUSE OF ACTION
Discrimination in Violation of Title VII

39. Plaintiff repeats and realleges each and every allegation set forth above.

40. Defendant unlawfully discriminated against Plaintiff in the terms and conditions of his employment by subjecting him to a hostile work environment, disparate treatment, and termination on the basis of his religion, in violation of Title VII.

41. As a result, Plaintiff has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

42. Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Plaintiff's federally protected rights.

43. Plaintiff is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

## SECOND CAUSE OF ACTION
Retaliation in Violation of Title VII

44. Plaintiff repeats and realleges each and every allegation set forth above.

45. Defendant unlawfully retaliated against Plaintiff for his protected activity by subjecting him to heightened scrutiny, discipline, disparate treatment, and termination, in violation of Title VII.

46. As a result, Plaintiff has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

47. Defendant willfully engaged in retaliatory practices with malice and/or reckless indifference to Plaintiff's federally protected rights.

48. Plaintiff is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

## THIRD CAUSE OF ACTION
### Discrimination in Violation of the ADA

49.     Plaintiff repeats and realleges each and every allegation set forth above.

50.     Defendant unlawfully discriminated against Plaintiff in the terms and conditions of his employment by subjecting him to disparate treatment, failing to accommodate, and termination on the basis of his disability and/or perceived disability, in violation of the ADA.

51.     As a result, Plaintiff has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

52.     Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Plaintiff's federally protected rights.

53.     Plaintiff is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of the ADA

54.     Plaintiff repeats and realleges each and every allegation set forth above.

55.     Defendant unlawfully retaliated against Plaintiff for his protected activities by subjecting him to disparate treatment and termination in violation of the Americans with Disabilities Act.

56.     As a result, Plaintiff has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

57.     Defendant willfully engaged in retaliatory practices with malice and/or reckless indifference to Plaintiff's federally protected rights.

58.     Plaintiff is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

FIFTH CAUSE OF ACTION
Discrimination in Violation of the NYSHRL

59.     Plaintiff repeats and realleges each and every allegation set forth above.

60.     Defendant unlawfully discriminated against Plaintiff in the terms and conditions of his employment by subjecting him to a hostile work environment, failure to accommodate, disparate treatment, and termination on the basis of his religion, disability, and/or perceived disability in violation of the NYSHRL.

61.     As a result, Plaintiff has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

62.     Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Plaintiff's rights.

63.     Plaintiff is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

SIXTH CAUSE OF ACTION
Retaliation in Violation of the NYSHRL

64.     Plaintiff repeats and realleges each and every allegation set forth above.

65.     Defendant unlawfully retaliated against Plaintiff in the terms and conditions of his employment because of his protected activity, in violation of the NYSHRL.

66.     As a result, Plaintiff has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

67.     Defendant willfully engaged in retaliatory practices with malice and/or reckless indifference to Plaintiff's rights.

68.     Plaintiff is entitled to an award of compensatory damages, economic damages, attorney's fees, and costs.

## SEVENTH CAUSE OF ACTION
### Discrimination in Violation of the NYCHRL

69.     Plaintiff repeats and realleges each and every allegation set forth above.

70.     Defendant unlawfully discriminated against Plaintiff in the terms and conditions of his employment by subjecting him to a hostile work environment, failure to accommodate, disparate treatment, and termination on the basis of his religion, disability, and/or perceived disability in violation of the NYCHRL.

71.     As a result, Plaintiff has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

72.     Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Plaintiff's rights.

73.     Plaintiff is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

## EIGHTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

74.     Plaintiff repeats and realleges each and every allegation set forth above.

75.     Defendant unlawfully retaliated against Plaintiff in the terms and conditions of his employment because of his protected activity, in violation of the NYCHRL.

76.     As a result, Plaintiff has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

77.     Defendant willfully engaged in retaliatory practices with malice and/or reckless indifference to Plaintiff's rights.

-11-

78.     Plaintiff is entitled to an award of compensatory damages, economic damages, attorney's fees, and costs.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, it is respectfully requested that the Court enter judgment for Plaintiff and against Defendant, in amounts to be determined by the finder of fact, awarding economic, compensatory, and punitive damages, attorney's fees, and costs, and granting such other relief as may be just.

Dated: New York, New York
         March 18, 2026

LIPSKY LOWE LLP

<u>s/ Douglas B. Lipsky</u>
Douglas B. Lipsky
Travis Pierre-Louis
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830
212.392.4772
doug@lipskylowe.com
travis@lipskylowe.com
*Attorneys for Plaintiff*